IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| OSAGE ENVIRONMENTAL, INC. | § | CASE NO. 13-20452 |
| Debtor. | § | |
| | § | (Chapter 11) |

**DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL
APPROVAL OF POSTPETITION PURCHASE AND SALE AGREEMENT**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE**.

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

TO THE HONORABLE U.S. BANKRUPTCY JUDGE RICHARD S. SCHMIDT:

COMES NOW Osage Environmental, Inc. ("Debtor") files its Debtor's Emergency Motion for Interim and Final Approval of Postpetition Purchase and Sale Agreement ("Motion"), and in support, respectfully shows the Court as follows:

## I.  JURISDICTION AND VENUE

1.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (D), (M), (N) and (O).  Venue of this case is proper in this district pursuant to 28 U.S.C. §§ 1408(1) and (2).  The relief herein sought is under §§ 105(a), 363, and 364 of title 11 of the United States Code ("Bankruptcy Code") and Rule 4001(c) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

## II.  BACKGROUND

2.      On September 19, 2013 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").

3.      The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner, or creditors' committee has been appointed in the Debtor's case.

## III.  PROPOSED DEBTOR-IN-POSSESSION PURCHASE AND SALE AGREEMENT

4.      The Debtor herein seeks entry of an order authorizing the Debtor to sell certain of its Receivables and to obtain post-petition financing from Catalyst Finance, L.P. ("Catalyst" or "Post-Petition Lender"), pursuant to the terms contained in the proposed Purchase and Sale Agreement between the Post-Petition Lender and the Debtor ("Agreement"), a copy of which is attached hereto as Exhibit A.  The Debtor and Post-Petition Lender have been involved in discussions toward the terms of the proposed Agreement.  Under the proposed Agreement, the Post-Petition Lender agrees to purchase the Debtor's account receivables ("Receivables") for the gross amount of the invoice or claim, deducting ten percent (10%).  *See* ¶ 6, Agreement.  Then, if

the Post-Petition Lender receives payment of an invoice within a certain amount of days from the date of its purchase, the Post-Petition Lender accordingly rebates a set percentage to the Debtor, which is reduced in correspondence to the number of days within which the Post-Petition Lender receives payment on the invoice from the account debtor. *See* ¶ 6, Agreement.

5.      In addition, under the proposed Agreement, a Reserve Account[1] will be created, which will be funded by a 10% deduction by the Post-Petition Lender from the purchase price of each invoice. *See* ¶ 7, Agreement.  The proposed Agreement also provides that if the Post-Petition Lender discovers that a particular Receivable is subject to dispute, the Post-Petition Lender shall have the right to return the Receivable to the Debtor, and upon such occurrence, the Debtor shall pay to the Post-Petition Lender the face amount of the invoice, less any payments previously received, or the Post-Petition Lender may deduct the price of same from the Reserve Account, or subtract such amount from the purchase price of the next account receivable that it purchases. *See* ¶ 2, Agreement.  Further, pursuant to the Agreement, the Debtor seeks authority to purchase and buy from the Post-Petition Lender any Receivable that the Post-Petition Lender has purchased from the Debtor, and that has not been paid within ninety (90) days after the date of the invoice by the account debtor as set forth in the Repurchase Agreement.  *See* p. 15, ¶ 4, Agreement.

6.      Additionally, pursuant to the proposed Agreement, the Debtor seeks authority to grant the Post-Petition Lender a first priority lien ("Post-Petition Lien") on any Receivable that it purchased and on other related collateral consisting of, among other things, (i) contract rights, notes, drafts, acceptances, general intangibles; (ii) the balance of any deposit accounts, reserve accounts, credit balances, or other reserves maintained with or by the Post-Petition Lender for

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed in the Agreement or the Motion as the case may be.

- 3 -

the benefit of the Debtor; (iii) all present and future accounts receivable, general intangibles, chattel paper, documents, instruments, non-cash proceeds, monies, deposit accounts, income, benefits, judgments, claims, rights to payment, law suits; (iv) the Reserve Account; (v) proceeds; and (vi) furniture, fixtures, inventory, and equipment now owned or hereafter acquired ("Collateral").  *See* ¶8, Agreement.

### IV.  NEED FOR APPROVAL OF THE PURCHASE AND SALE AGREEMENT

7.     The Debtor herein seeks authority to (a) sell its Receivables to the Post-Petition Lender postpetition pursuant to the terms set forth in the proposed Agreement contained in Exhibit A attached hereto; (b) to grant liens to Catalyst as more particularly set forth herein and as set forth in the proposed Agreement (as herein defined "Post-Petition Lien"); and (c) to repurchase any Receivable that the Debtor may be obligated to repurchase pursuant to the proposed Agreement, including the Repurchase Agreement.  Notably, no other creditor of the Debtor has a lien on any Receivable or any of the other Collateral.

8.     The Debtor must pay overhead, operating expenses, and other ordinary course of business obligations that are necessary to maintain and preserve the going-concern value of the Debtor's assets and businesses, as well as to administer the estate, including, paying (a) any pre-petition operating and other expenses approved by the Court; (b) the post-petition operations of the Debtor's business; and (c) all costs and expenses arising in connection with the administration of the estate.  The Debtor believes that the proposed Agreement will provide funding crucial to its business operations and its progress through its bankruptcy case. The proposed post-petition sale of its Receivables thus is required to preserve and maintain the Debtor's going concern value and is, therefore, in the best interest of the Debtor's estate and creditors.  The availability of funds from the proposed Agreement with the Post-Petition Lender is necessary to provide working capital for the Debtor to continue paying the Debtor's suppliers

and other vendors in order to give the Debtor's customers the necessary confidence to continue to engage in ongoing relationships with the Debtor.

9.      The Debtor believes that the terms and conditions of the Agreement are reasonable.  Further, the Debtor does not believe that it could obtain such factoring services or traditional financing on better terms than those offered by the Post-Petition Lender.  In fact, prior to the Petition Date, the Debtor sought such financing from others, and could not find terms equal to or better than the terms offered by the Post-Petition Lender in the proposed Agreement.

10.     Pursuant to § 364(a) of the Bankruptcy Code, if the Debtor is authorized to operate the business of the Debtor pursuant to § 1108, "unless the Court orders otherwise, the [DIP] may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under § 503(b)(1) as an administrative expense."  11 U.S.C. § 364(a);  *See In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (remarking that debtor must establish that the credit transaction is necessary to preserve the estate and the terms of the transaction are fair and reasonable).

11.     Furthermore, the Debtor submits that ample authority exists for approval of its post-petition sale of the Receivables.  Section 363 of the Bankruptcy Code, which authorizes a debtor to sell assets of the estate other than in the ordinary course of business, provides, in relevant part: "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U. S.C. § 363(b)(1).  Although Bankruptcy Code § 363 does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, courts have held that approval of a proposed sale of property pursuant to § 363(b) is appropriate if the transaction represents the reasonable business judgment of the debtor. *See, e.g., Institutional Creditors of Continental Airlines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines,*

- 5 -

*Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986).  Courts look to various factors to determine whether to approve a motion under § 363(b) of the Bankruptcy Code, such as: (a) whether a sound business reason exists for the proposed transaction; (b) whether fair and reasonable consideration is provided; (c) whether the transaction has been proposed in good faith; and (d) whether adequate and reasonable notice is provided. *See, e.g., In re Condere*, 228 B.R. 615, 626 (Bankr. S.D. Miss. 1998).

12.     Here, the Debtor satisfies the requirements of § 364(d) of the Bankruptcy Code as the Debtor is unable to obtain credit otherwise.  The Debtor seeks to grant the Post-Petition Lien only upon the Collateral to the Post-Petition Lender, who has agreed to the granting of such lien. Further, the Post-Petition Lien shall be to any pre-petition subject liens and security interests in the Collateral and its liens shall be limited in amount to the funds actually due to the Post-Petition Lender under the Repurchase Agreement.  The Debtor will hold cash that will be free and clear of liens.

13.     Additionally, the Debtor meets the requirements of § 363 for the sale of the Receivables.  The Debtor has thoroughly considered viable alternatives, and has concluded, in the exercise of its business judgment, that the sale its Receivables is clearly for the benefit of the Debtor's estate and creditors.  As set forth above, it is critical to maintaining the Debtor's operations and thus, preserving and enhancing the Debtor's going concern value. With the additional liquidity provided by the Purchase and Sale Agreement, the Debtor will be able to obtain goods and services in connection with its operations, thereby permitting the Debtor to generate revenues, pay its employees, and operate its business for the benefit of all parties-in-interest.  The proceeds of the sale of the Debtor's Receivables will support operation of the Debtor's business, and will be in accordance with the Debtor's Proposed Budget, which is attached hereto as Exhibit B.  Accordingly, the Debtor requests authority to enter into the

Purchase and Sale Agreement with the Post-Petition Lender pursuant to the terms set forth in Exhibit A.  In addition, the Debtor seeks an order modifying the automatic stay to the extent necessary to enable the Post-Petition Lender to perfect the Post-Petition Lien granted hereunder.

WHEREFORE PREMISES CONSIDERED the Debtor requests that the Court enter an Order (a) authorizing the Debtor to sell certain accounts receivable (herein "Receivables") and to obtain post-petition financing from Catalyst, L.P. (herein "Catalyst" or "Post-Petition Lender") pursuant to the terms set forth in the proposed Purchase and Sale Agreement (herein "Agreement") and the Repurchase Agreement; (b) authorizing the Debtor, on an interim basis, to utilize the proceeds from the sale of its Receivables to Catalyst, until entry of a final order on approval of the Agreement, and in accordance with the terms set forth in the Agreement; (c) authorizing the Debtor to grant a security interest and lien in the Debtor's post-petition Collateral (as herein defined, "Post-Petition Lien"), provided however, that the amount of such liens shall be limited in amount to the funds actually due to Catalyst under the Repurchase Agreement; (d) providing that, in the event there are insufficient assets of the Debtor's estate to pay amounts due to Catalyst under the Repurchase Agreement and allowed administrative expenses in full, the Post-Petition lien shall be subordinated to both (a) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a); and (b) allowed fees and out-of-pocket expenses payable to professionals retained by the Debtor's estate pursuant to 11 U.S.C. §§ 327, 330, or 331; (e) setting a hearing on final approval of the Motion; and (f) granting to the Debtor such other and further relief to which it may be justly entitled.

Dated: September 19, 2013.

Respectfully submitted,

JACKSON WALKER L.L.P.

By: /s/ *Jennifer F. Wertz*
    Patricia Baron Tomasco
    State Bar No. 01797600
    Jackson Walker LLP
    100 Congress Avenue, Suite 1100
    Austin, Texas 78701
    (512) 236-2076 – Direct Telephone
    (512) 691-4438 – Direct Facsimile
    Email: ptomasco@jw.com

    Jennifer F. Wertz
    State Bar No. 24072822
    (512) 236-2347 – Direct Telephone
    (512) 391-2147 – Direct Facsimile
    Email: jwertz@jw.com

    Matthew D. Cavenaugh
    State Bar No. 24062656
    Jackson Walker L.L.P.
    1401 McKinney Street, Suite 1900
    Houston, Texas 77010
    (713) 752-4284 – Direct Telephone
    (713) 308-4184 – Direct Facsimile
    Email: mcavenaugh@jw.com

    J. Scott Rose
    State Bar No. 17252800
    Jackson Walker L.L.P.
    112 E. Pecan Street, Suite 2400
    San Antonio, Texas 78205
    (210) 978-7760 – Direct Telephone
    (210) 242-4645 – Direct Facsimile
    Email:  srose@jw.com

    **PROPOSED COUNSEL FOR THE
    DEBTOR-IN-POSSESSION**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on that the 19th day of September 2013, a true and correct copy of the foregoing was sent via the Court's CM/ECF electronic notification system to the following parties, and all other parties requesting service through same:

Office of The United States Trustee
606 N. Carancahua Street, Suite 1107
Corpus Christi, TX 78401

*/s/ Jennifer F. Wertz*
Jennifer F. Wertz
