IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| OSAGE ENVIRONMENTAL, INC. | § | CASE NO. 13-20452 |
|    Debtor. | § | |
| | § | (Chapter 11) |

### DECLARATION OF RICHARD M. ROBBINS, FINANCIAL
### CONSULTANT TO THE DEBTOR IN SUPPORT OF FIRST DAY MOTIONS

My name is Richard M. Robbins.  I am competent to testify about the following matters:

1.　　　I am the Financial Consultant for Osage Environmental, Inc. ("Debtor") and I am familiar with the day-to-day operations, business, and financial affairs of each of the Debtors, as debtors, and debtors-in-possession.　　As the Debtor's Financial Consultant, I have been responsible for advising management on financial and operational matters.  I have served as an integral part of the Debtor's management team.

2.　　　I submit this declaration ("Declaration") to assist the Court and other parties in interest in understanding the circumstances that have compelled the commencement of this Chapter 11 case, and in support of (i) the Debtor's voluntary petition for relief under Chapter 11 of title 11 of the United States Code ("Bankruptcy Code") filed on the date hereof ("Petition Date") and (ii) the relief, in the form of motions, that the Debtor has requested of the Court ("First Day Motions").  I am familiar with the contents of each First Day Motion (including the exhibits thereto), and believe that the relief sought in each First Day Motion: (a) is necessary to enable the Debtors to operate in Chapter 11 with minimum disruption or loss of productivity or value; (b) constitutes a critical element in preserving the value of the estates' assets; and (c) best serves the interests of the Debtors' estates and creditors.

3.　　　Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other members of the Debtor's senior management,

my review of relevant documents, or my opinion based upon my experience and knowledge of the Debtor's operations and financial condition.  If I were called to testify, I could and would testify competently to the facts set forth in this Declaration.  Additionally, I am authorized to submit this Declaration on behalf of the Debtors.

4.     This Declaration is intended to provide a summary overview of the Debtor and this Chapter 11 case.

**A.     Overview of Osage Environmental, Inc.'s Business**

    **i.     Organizational Structure**

5.     The Debtor is a waste hauler specializing in the collection, transportation and disposal of oil field waste.  The Debtor is led by John P. Rozypal as President with the Director of Sales, Director of Operations, Director of Corporate Services and the Director of Finance managing the day-to-day operations of the enterprise.  The Debtor employs drivers and various others in the ordinary course of operations.

    **ii.     Prepetition Debt**

6.     Competition in the industry, particularly in the Eagle Ford Shale, has led to significantly reduced revenues for the Debtor over the past year.  Operations could not be scaled back commensurate to the reduction in business.  This has led to significant burdens on the Debtor and created unpaid debts.

    **iii.     Financial Information**

7.     As of the Petition Date, the Debtor has total assets of approximately $ 3.7 million and total liabilities of approximately $ 10.3 million.  The Debtor employs approximately sixty (60) people.

iv.     **Events Precipitating the Chapter 11 Filing**

8.      In the past twelve months, competition has increased significantly in the industry in which the Debtor operates.  Prices and business volumes have declined as a result.  The Debtor has not been able to reduce the level of expenses proportionate to this decline in business due to the nature of its equipment leases and various other contracts.  Cash outflows have been significantly greater than what can be supported by the current level of operations, and a drain on working capital has resulted.

B.     **Summary of First Day Motions**

9.      Concurrently with the filing of its Chapter 11 Petition, the Debtor has filed various First Day Motions, all of which the Debtor believes are necessary to enable it to operate in Chapter 11 with minimum disruption.    The Debtor respectfully requests that the relief requested in each of the First Day Motions be granted because the relief requested therein is essential to stabilizing and facilitating the Debtor's operations during these Chapter 11 cases and to promote the Debtor's chances at reorganization.  A description of the relief requested and the facts supporting each of the First Day Motions is set forth below.

v.     **Debtor's Emergency Motion for Interim and Final Approval of Post-Petition Purchase and Sale Agreement ("Purchase and Sale Agreement Motion")**

10.     Pursuant to the Purchase and Sale Agreement Motion, the Debtor is requesting entry of interim and final orders authorizing (a) the Debtor to sell certain accounts receivable (as defined in the Motion "Receivable"), and to obtain post-petition financing from Catalyst, L.P. (herein "Catalyst" or "Post-Petition Lender") pursuant to the terms set forth in the proposed Purchase and Sale Agreement (as defined in the Motion, "Agreement") and the Repurchase Agreement; (b) authorizing the Debtor, on an interim basis, to utilize the proceeds from the sale of its Receivables to Catalyst, until entry of a final order on approval of the Agreement; (c)

authorizing the Debtor to grant a security interest and lien in the Debtor's post-petition collateral (as defined in the Motion, "Post-Petition Lien"), provided however, that the amount of such liens shall be limited in amount to the funds actually due to Catalyst under the Repurchase Agreement; and (d) providing that, in the event that there are insufficient assets of the Debtor's estate to pay amounts due to Catalyst under the Repurchase Agreement and allowed administrative expenses in full, the Post-Petition Lien shall be subordinated to both (a) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a); and (b) allowed fees and out-of-pocket expenses payable to professionals retained by the Debtor's estate pursuant to 11 U.S.C. §§ 327, 330, or 331.

11.     To finance its Chapter 11 case and continue to fund its operations, the Debtor has sought approval to enter into the Agreement on the terms set forth in the Purchase and Sale Agreement Motion.  Approval of the Purchase and Sale Agreement Motion will provide the Debtor with immediate and ongoing access to borrowing availability to pay its current and ongoing operating expenses, including wages and salaries, necessary budgeted expenditures, as well as utility and vendor costs.  I believe that, unless the Debtor is authorized to enter into the Agreement, the Debtor may be forced to cease certain of its operations, which will likely result in irreparable harm to its business, deplete its going concern value, and jeopardize its ability to reorganize and maximize value for its creditors and estate.  I believe that the Agreement is necessary to preserve and enhance the value of the estate for the benefit of all parties in interest.  Accordingly, I believe that the timely approval of the relief requested in the Purchase and Sale Agreement Motion is imperative.

12.     The proposed Agreement with Catalyst as set forth in the Purchase and Sale Agreement Motion was extensively negotiated, at arm's length, and in good faith.  Further, the

4

proposed Agreement with Catalyst will allow the Debtor to immediately access needed liquidity at this critical, early stage of its reorganization efforts.  I believe the Debtor cannot obtain better terms from any other source under the circumstances.

13.    As a result, the Debtor requests interim and final approval of the Purchase and Sale Agreement Motion.  I believe that the relief requested in the Purchase and Sale Agreement Motion is in the best interests of the Debtor, its estates, and its creditors, and absent such relief, the Debtor will experience immediate and irreparable harm, and its reorganization efforts will be jeopardized.

### vi.    Debtor's Expedited Motion for Order Authorizing the Payment of Pre-Petition Employee Wages and Related Obligations ("Employee Obligation Motion")

14.    The Debtor requests entry of an order authorizing the Debtor to pay, continue, or otherwise honor prepetition obligations to or for the benefit of its current employees for salaries and other compensation and benefits incurred prior to the Petition Date ("Employee Wages").  The Debtor also seeks immediate authority to make payments to employees on account of prepetition employee obligations up to the priority expense limit imposed on employee claims under 11 U.S.C. § 507(a)(4) of the Bankruptcy Code.

15.    As of the Petition Date, the Debtor employed approximately 60 employees.  In the ordinary course of the Debtor's business, each of the Debtor's employees earns and is paid salaries or other compensation on a weekly or bi-monthly basis.  The Debtor's employees perform a variety of critical functions, including the day-to-day operations of the Debtor's business, as well as variety of administrative and other tasks.  The skills and experience of the Debtor's employees are essential to the Debtor's ongoing operations as well as to the Debtor's ability to effectively reorganize.

16.    As of the Petition Date, the Employee Wages due to employees for the payroll period of September 1, 2013 through September 19, 2013 was not processed prior to the Debtor's Petition.  Accordingly, there are amounts still owed to employees related to pre-petition time periods that need to be paid, and such amounts were reflected on Exhibit A to the Employee Obligation Motion.

17.    I believe the vast majority of the Debtor's employees rely exclusively on their compensation to pay their daily living expenses.  If the Debtor is not permitted to honor its outstanding obligation to its employees, I believe that many of the Debtor's employees will be exposed to significant financial difficulties.  Furthermore, if the Debtor is unable to satisfy such obligations, its employee morale will be jeopardized at a time when its employee support is crucial.

18.    I believe that the relief requested in the Employee Obligation Motion is in the best interests of the Debtor's estate and will enable the Debtor to continue to operate its business during this Chapter 11 case without disruption so as to avoid immediate and irreparable harm to the Debtor's estate.  Accordingly, I respectfully submit that the Employee Obligation Motion should be approved.

     **vii.**    **Debtor's Emergency Motion for Interim and Final Orders Pursuant to Sections 105(a) and 366 of the Bankruptcy Code: (I) Prohibiting Utilities from Altering, Refusing, or Discontinuing Services To, Or Discriminating Against, the Debtors on Account of Prepetition Amounts Due; (II) Deeming Utilities Adequately Assured of Future Payment; and (III) Establishing Procedures for Determining Requests for Adequate Assurance ("Utility Motion")**

19.    In connection with the operation of their business, the Debtor obtains gas, water, sewer, electric, internet, phone, or similar services ("Utility Services") from a utility company

("Utility Company").  The Debtor pays the Utility Company, on average, approximately $625.00 per month in the aggregate for services provided.

20.     Prior to the Petition Date, the Debtor paid the Utility Company on a timely basis. It is my belief that the Debtor intends to pay postpetition obligations owed to the Utility Company in a timely manner.  Moreover, I anticipate that the Debtor will have sufficient liquidity to pay all postpetition utility obligations.

21.     I believe that uninterrupted utility services are essential to the Debtor's ongoing operations and business, and correspondingly, to preserve the value of the Debtor's estates. If the Utility Company were to refuse or discontinue services, even for a brief period, I believe that the Debtor's business operations would be severely disrupted, and the impact on the Debtor's business operations, customer relationships, and profits would be very negative.  Such a negative impact on the Debtor's business would be immediate and would serve to jeopardize the Debtor's reorganization efforts.  Accordingly, I believe that it is critical that the Utility Services remain uninterrupted.

22.     To ensure uninterrupted Utility Services, the Debtor has proposed to provide a deposit in the aggregate of a sum equal to one month of projected Utility Services for the benefit of any Utility Company, unless a Utility Company agrees to a lesser amount, provided however, that if a Utility Company was in possession of a deposit made by the Debtor prepetition, that Utility Company will not be entitled to an additional deposit ("Proposed Adequate Assurance to Utility Companies").  I believe that the Proposed Adequate Assurance to Utility Companies constitutes sufficient adequate assurance to the Utility Companies of payment for postpetition Utility Services.   If a Utility Company does not request additional adequate assurance, pursuant

to the motion, that Utility Company will be deemed to be adequately assured within the meaning of § 366 of the Bankruptcy Code.

23.     The Debtor therefore respectfully requests that the Utility Companies be deemed to have adequate assurance of payment within the meaning of § 366 of the Bankruptcy Code, and be prohibited from altering, refusing, or discontinuing services on account of prepetition amounts outstanding or on account of any perceived inadequate assurance.  The Debtor also respectfully requests approval of the Proposed Adequate Assurance Procedures for Utility Companies. Lastly, the Debtor seeks scheduling of a final hearing date on their proposed adequate assurance. Accordingly, I believe the Utility Motion should be granted.

### viii.     Debtors' Emergency Motion Pursuant to Provide Payment to Certain Providers and Authorizing Setoff with Respect to Certain Providers ("Provider Motion")

24.     The Debtor provides collection, transportation, and disposal of oil field waste, in addition to other related oilfield and environmental services.  In connection with its provision of such services, the Debtor, in order to provide services to its customers, purchases services from various types of oilfield service providers ("Providers").  The Debtor relies upon the Providers' provision of such services to the Debtor's customers.  The services provided by the Providers to the Debtor thus are an integral and essential part of the Debtor's ongoing operations.  The Debtor has identified such Providers that have pre-petition claims for providing essential goods or services prior to the Petition Date, and attached a list of such Providers to the Provider Motion.

25.     In the Provider Motion, the Debtor proposes two different solutions: (1) the particular operator pays the amounts necessary to the particular Provider to avoid a lien being filed against the subject oil and gas properties, and the Debtor in turn would repay the particular operator by discounting services provided by the Debtor to the operator, for which the operator

would otherwise pay to the Debtor, or (2) the Debtor makes payment directly to the Provider. The Debtor submits that the first suggested method, payment by the particular operator directly to the Provider, in exchange for resulting credit by the Debtor to the operator is preferable because it requires less cash expenditures for the Debtor to achieve the same goal.

26.     In the Provider Motion, the Debtor requested that it be authorized to provide payment to the Providers via either of the two suggested methods, preferably the first suggested method by which the Providers are paid by the particular operator, and the operator in turn receives a discount, or an offset, from the Debtor for the Debtor's provision of services to the Debtor.  As discussed in the Provider Motion, the Providers are vital to the Debtor's operations.

27.     Furthermore, if the Providers are not paid for the services they have provided, I believe that failure to pay such amounts could result in the Providers' refusal to deliver critical materials or services, and/or their assertion of liens against various oil and gas properties. Accordingly, I believe that the services provided by the Providers are absolutely critical to the Debtor's ability to continue operating and to maintaining the value of the Debtor's business for the purpose of reorganization, and thus, is in the best interests of the Debtor's creditors.  Without approval of the relief requested in the Providers Motion, I believe that disruption in operations would likely result, as well as a loss of future economic opportunities, both of which are critical to the Debtor's day-to-day business efforts, as well as to the Debtor's reorganization efforts.  I submit that payment, via either procedure suggested in the Provider Motion, is necessary to incentivize the Providers to continue to work with the Debtor on an ongoing basis, which, in turn, will preserve and foster positive business relationships between the Debtor and various operators with whom it does business.  Without such continued participation from the Debtor, I believe that the likelihood of the Debtor's reorganization will be sharply curtailed.

28.     I believe that the proposed payment, through either of the two suggested methods is essential to success of the Debtor's reorganization efforts, and is in accordance with the Bankruptcy Code.  The relief requested by the Debtor with respect to the Providers will ensure that the Debtors' operations will continue as normally as possibly following their bankruptcy filing.  Accordingly, the Debtor requests that the Providers Motion be granted.

ix.     **Debtor's Emergency Motion for Order (1) Authorizing Continued Use of Existing Business Forms and Records and (2) Authorizing Maintenance of Existing Corporate Bank Accounts ("Bank Account Motion")**

29.     The Debtor seeks approval of its continued use of existing business forms and records, and also authority to maintain its existing corporate bank accounts.  In particular, the Debtor seeks authority to continue to maintain its existing bank accounts, have those accounts swept on a regular basis, and the amounts then deposited into a designated debtor-in-possession bank account with Wells Fargo Bank ("Wells Fargo") ("Wells Fargo DIP Bank Account").  The Debtor will work with Wells Fargo to facilitate this transition.

30.     The Debtor's business and financial affairs require the collection, disbursement, and movement of funds through numerous bank accounts.  I understand that the Office of the United States Trustee has established certain operating guidelines for debtors-in-possession to supervise the administration of Chapter 11 cases, including changes to a debtor's bank accounts.  These guidelines require, among other things, to establish one debtor-in-possession account for all estate money required for the payment of taxes, to close all existing bank accounts an open new debtor-in-possession accounts, to maintain a separate debtor-in-possession account for cash collateral, and to obtain checks that bear the designation "debtor-in-possession" and reference the bankruptcy case number and the type of account on all such checks.

10

31.     In my opinion, the implementation and enforcement of these guidelines in these Chapter 11 cases, however, will severely disrupt and derail the ordinary financial operations of the Debtor.  Implementing such procedures will entail costly administrative burden and will likely cause confusion to the Debtor's customers.  Accordingly, the Debtor respectfully requests authority to continue to use their existing business forms and records, as well as to maintain their existing corporate bank accounts.  My familiarity with the Debtor's business operations leads me to believe that their continuation, as well as the implementation of the Wells Fargo DIP Bank Account as herein described, is essential to the Debtor's ongoing operations and their efforts toward reorganization.

32.     I believe that requiring the Debtor to open new bank accounts at this early and critical stage of its Chapter 11 stage would be costly, impose unnecessary administrative burdens, and cause disruption.  As a result, the Debtor requests approval of the Bank Account Motion.

> **x.     Debtor's Emergency Motion Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1005(c) and 9008 Seeking Authority to Implement Certain Notice Procedures ("Notice Procedures Motion")**

33.     The Debtor seeks entry of an order authorizing the establishment of certain notice, case management, and administrative procedures ("Notice Procedures").  I understand that these Notice Procedures will promote the efficient and orderly administration of this Chapter 11 case, by, among other things, (a) limiting service of documents filed in this Chapter 11 case to only those parties that have an interest in the subject matter thereof and (b) authorizing electronic service.  At the same time, the Notice Procedures ensure that appropriate notice is provided, and do not seek to waive or infringe upon the substantive rights of any party-in-interest in this Chapter 11 case.

34.     I believe that the relief requested in the Notice Procedures Motion is in the best interests of the Debtor's estate, its creditors, and all parties-in-interest, and will enable the Debtor to continue to operate its business in Chapter 11 with as minimal disruption as possible. Accordingly, I respectfully submit the Notice Procedure Motion should be approved.

35.     Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief, after reasonable inquiry.

Dated: September 19, 2013.

**OSAGE ENVIRONMENTAL, INC.**

*/s/ Richard M. Robbins*
By:  Richard M. Robbins
Its:  Financial Consultant

9591408v.1 143403/00001